IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAMES EARL COLLVINS, JR., <br><br> Plaintiff, <br><br> vs. <br><br> PETE C. HACKFORD and RICK STRUM, <br><br> Defendants. | ORDER <br><br> and <br><br> MEMORANDUM DECISION <br><br> Case No. 2:10-CV-346 TC |

Mr. Collvins brought this case against Pete Hackford and Rick Strum, alleging claims under 42 U.S.C. § 1983 for violations of his Fifth[1] and Fourteenth Amendment rights, claims under Article I, Sections 7, 24, and 27 of the Utah Constitution,[2] and for breach of the implied covenant of good faith and fair dealing. Mr. Collvins and Defendants filed cross motions for summary judgment on each of the causes of actions. For the reasons set forth and as more fully detailed below, Mr. Collvins's Motion for Summary Judgment (Dkt. No. 26) is DENIED and Defendants' Motion for Summary Judgment (Dkt. No. 32) is GRANTED.

**BACKGROUND**

Mr. Collvins worked for over thirty years as a boiler inspector. In 2007, Mr. Collvins was

---

[1] Mr. Collvins's Complaint includes claims under the Fifth Amendment. But the Fifth Amendment applies only to federal employees. Ward v. Anderson, 494 F.3d 929, 932 n.3 (10th Cir. 2007) ("only the Fourteenth Amendment imposes a due process requirement on state officials"). As state employees, Defendants cannot be sued under the Fifth Amendment.

[2] Although Mr. Collvins includes claims under the Utah Constitution in the jurisdiction and venue section of his Complaint, none of the causes of action mention the Utah Constitution. And notably, Mr. Collvins's motion for summary judgment, which was filed first, does not analyze any of the causes of action under the Utah Constitution.

employed by Hartford Steam Boiler Inspection and Insurance Co. (Hartford). As a boiler inspector in Utah, Mr. Collvins was required to have a Certificate of Competency (Certificate) issued by the Utah Division of Boiler and Elevator Safety (the Division) and to be certified by the National Board of Boiler and Pressure Vessel Inspection (the National Board). During the relevant time period (2006 - 2009), Defendant Pete Hackford was the Division Director and Defendant Rick Strum was the Chief Boiler/Pressure Vessel Inspector for the Division.

In 2006, Mr. Collvins's Certificate was temporarily suspended and then reinstated. As a result, Mr. Collvins was placed on probation and his employer, Hartford, implemented corrective action. In 2007, the Division received complaints that Mr. Collvins had issued Certificates of Inspection and Permits to Operate for two boilers at Utah State University that had been removed from service for over two years. After some investigation and in light of Mr. Collvins's probation status in 2006, Mr. Strum sent a letter to Hartford proposing that it implement corrective action similar to what was done in 2006 and warning that any further discrepancies would result in suspension of Mr. Collvins's Certificate. Shortly after sending this letter, the Division received similar complaints from Davis and Cache County School Districts. With these two additional complaints and after further investigation, Mr. Strum consulted with Mr. Hackford and the Deputy Commissioner and General Counsel for the Labor Commission, Alan Hennebold. Based on this consultation and concerns about public safety, Mr. Strum decided to suspend Mr. Collvins's Certificate.

Mr. Collvins disputes that Mr. Strum's decision was based on a concern for public safety. In support of his contention, Mr. Collvins points to Mr. Strum's testimony during the administrative hearing. When asked if there is any actual safety hazard created by issuing a

permit on a boiler that is not present and does not exist, Mr. Strum responded "none that I can think of." (Administrative Hr'g Tr. 125:16-21, Oct. 14, 2008 [Dkt. No. 37-2].) But during other portions of his testimony, Mr. Strum indicated that Mr. Collvins's actions created a safety concern. (See Administrative Hr'g Tr. 70:4-16, Oct. 14, 2008 [Dkt. No. 44-3] ("Well, it could be a safety concern, because if I don't get notified, that boiler never gets looked at.").) And in his declaration, Mr. Strum stated that he decided to suspend Mr. Collvins's Certificate "[b]eacuse Collvins was on probation and had a history of improper inspections, and because of the potential that more errors in Collvins's inspections could jeopardize public safety." (Strum Dec. ¶ 42 [Dkt. No. 33-2].) Although there may be some dispute as to whether Mr. Strum believed particular types of errors created a safety concern, when the evidence is viewed in its totality, there is no dispute that the combination of Mr. Collvins's alleged mistakes caused Mr. Strum to be concerned about safety.[3]

On November 26, 2007, Mr. Strum sent a letter to Mr. Collvins and Hartford notifying them that Mr. Collvins's Certificate had been suspended. Mr. Collvins emailed the Division on November 28, stating that he intended to appeal. Mr. Collvins sent a written request for appeal the following day. Shortly after, on December 3, Mr. Strum notified the National Board that Mr. Collvins's Certificate had been suspended and requested that the National Board conduct a peer

---

[3] This concern based on the combination of Mr. Collvins's mistakes was also expressed by Carlton Fortin of Davis County School District. Mr. Fortin testified that "it's kind of hard to feel safe if somebody's telling you you have a vessel. What kind of inspection we're actually getting? If we're being told we have vessels we don't have, what kind of inspection are we getting on the vessels that we do have." (Administrative Hr'g Tr. 159:17-21 [Dkt. No. 44-2].) Mr. Fortin's testimony illustrates the reason that Mr. Collvins's argument is not persuasive: the fact that Mr. Strum didn't believe each type of mistake made by Mr. Collvins in isolation created a safety concern does not preclude Mr. Strum from having safety concerns because Mr. Collvins's inspections as a whole appeared to be unreliable.

review. There is some dispute about Mr. Strum's purpose in notifying the National Board. Mr. Strum explained that "[a]s the Chief Boiler and Vessel Inspector, and as a state representative to the National Board, [he] was required to notify the National Board of action regarding Collvins's Certificate." (Strum Dec. ¶ 47 [Dkt. No. 33-2]; see also Administrative Hr'g Tr. 78:16-18, Oct. 13, 2008 [Dkt. No. 27-2] (Mr. Hackford testified that "when [a certificate holder] violate[s] the national board rules, that's when we contact the national board and ask for a peer review.").) But during his administrative hearing testimony, Mr. Strum indicated that in contacting the National Board he wanted to make sure that Mr. Collvins didn't work anywhere else because he believed he was not competent to perform inspections. (Administrative Hr'g Tr. 294: 8-18, Oct. 14, 2008 [Dkt. No. 27-1].)

As a result of Mr. Strum's contacting the National Board, the National Board scheduled a peer review for March 2008. Between November 2007 and April 2008, Mr. Hackford and Mr. Strum did not take any further action on Mr. Collvins's appeal. They believed, based on Mr. Hennebold's advice, that there was no specific time frame that needed to be followed for Mr. Collvins's appeal. They also believed that Hartford would get involved as it had done in the past. Finally, they were waiting for the results of the National Board's peer review.[4]

On April 23, 2008, Mr. Collvins sent a third email to the Division requesting an appeal hearing. After this email and some subsequent communication with Mr. Collvins, Mr. Hackford notified Mr. Hennebold that he was recusing himself from Mr. Collvins's appeal because he had

---

[4] The National Board canceled the peer review. There is some dispute about whether this was because the National Board found out that Mr. Collvins was on disability (and not actively working) or because it was waiting for the result of the appeal. Either way, Mr. Hackford and Mr. Strum were aware that the National Board cancelled the peer review.

4

learned some information about Mr. Collvins's health. On May 19, 2008, Mr. Hennebold sent a letter to Mr. Collvins informing him that his appeal had been turned over to the Adjudication Division of the Labor Commission (Adjudication Division). On May 22, 2008, the Adjudication Division set a pre-hearing conference for June 26, 2008. Mr. Collvins requested a continuance and the conference was set for July 21. An administrative hearing was held in October 2008 and the Administrative Law Judge ruled that Mr. Collvins's Certificate should be reinstated to the probationary status of October 24, 2007.

Since the suspension of his Certificate, Mr. Collvins has remained an employee of Hartford. Approximately two weeks after the first letter was sent by Mr. Strum, Mr. Hartford took disability leave due to chemotherapy treatment. He has remained on disability leave since, even after his treatments were over, due to depression and anxiety resulting from this incident.[5] Neither Mr. Collvins nor Hartford ever sought re-certification for Mr. Collvins.

## ANALYSIS

**Standard of Review**

Summary Judgment

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

---

[5] There is no evidence of a point in time when Mr. Collvins's disability became due solely to his depression.

Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Once a defendant raises the defense of qualified immunity as a defense to an action, '[t]he plaintiff carries the burden of convincing the court that the law was clearly established.'" Powell v. Mikulecky, 891 F.2d 1454, 1457 (10th Cir. 1989) (quoting Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988)). The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." Pueblo Neighborhood, 847 F.2d at 645. "Only after plaintiff has shown a violation of a clearly established right does the defendant assume the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity." Powell, 891 F.2d at 1457.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (quoting Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001)). This does not require that the plaintiff show that the very act in question was previously held unlawful. Rather, the contours of the law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

**Procedural Due Process**

Property Interest

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). As a threshold matter, the court must determine whether Mr. Collvins has a property interest in his Certificate. See Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999).

The Defendants initially conceded that Mr. Collvins has a property interest in his Certificate. But, in their reply, Defendants assert that the law is actually unclear on the subject. Defendants' argument is based largely on the Tenth Circuit's decision in Federal Lands Legal Consortium, in which the court stated, "Where, as here, the federal government has not explicitly created a property right in a permit, we ordinarily look to the degree to which the federal government has restrained its own discretion relating to the permit." Id. at 1197. Based on this rule, Defendants argue that Mr. Collvins does not have a property interest in his Certificate because "the Chief Boiler Inspector can suspend [the Certificate] 'after due investigation and recommendation by the Labor Commission *for any reason* deemed detrimental to the boiler and pressure vessel inspection program of Utah.'" (Defs.' Reply Mem. [Dkt. No. 44] at 10 (quoting Utah Boiler Inspector Pressure Vessel Compliance Manual [Dkt. No. 33-4] at 15).) Defendants contend that this language gives the Chief Boiler inspector unrestrained discretion to suspend the Certificate.

Defendants' reliance on Federal Lands Legal Consortium is misplaced for several reasons. First, Federal Lands Legal Consortium involved a procedural due process claim under

7

the Fifth Amendment, not the Fourteenth Amendment. The court discussed the difference in property interests protected by the two amendments:

> In considering Fourteenth Amendment procedural due process claims, courts have noted that property interests are "not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." . . . Here, however, we deal with claims of Fifth Amendment due process violations and therefore consider whether federal law has created such a property interest.

Id. at 1196 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)). It was in this context that the court considered the degree to which the federal government restrained its discretion. Second, Mr. Collvins's property interest is based on his Certificate, which is more akin to a certification or a professional license than a permit. And third, even applying the discretion test, it is not clear that Mr. Collvins lacks a property interest in his Certificate; the Chief Boiler Inspector does not have unlimited discretion, rather he or she has discretion only as long as there is detriment to the boiler and pressure vessel inspection program of Utah. Accordingly, Defendants' argument based on Federal Lands Legal Consortium fails.

Further, in the Tenth Circuit "the revocation or removal of a license or certificate that is 'essential in the pursuit of a livelihood' requires procedural due process under the Fourteenth Amendment." Stidham v. Peace Officer Standards & Training, 265 F.3d 1144, 1150 (10th Cir. 2001) (quoting Bell v. Burson, 402 U.S. 535, 539 (1971)). In Stidham, the Tenth Circuit held that the plaintiff had a protected property interest in his certification as a peace officer. 265 F.3d at 1144. The certification was both required and enabled the plaintiff to work as a peace officer in the state of Utah. Id. The court's holding was based on Supreme Court precedent that "a license to practice one's calling or profession is a protected property right." Id. at 1149-50

8

(citing Bell, 402 U.S. at 539).

Here, Mr. Collvins has a protected interest in his Certificate. Like the peace officer certification in Stidham, the Certificate is both necessary (for some boiler inspections) and enables Mr. Collvins to work in the full capacity as a boiler inspector in Utah. Accordingly, Mr. Collvins's Certificate could not be revoked or suspended without due process.

Pre-deprivation Hearing

Ordinarily, "one who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest." Camuglia v. City of Albuquerque, 448 F.3d 1214, 1220 (10th Cir. 2006). "But 'due process is flexible and calls [only] for such procedural protections as the particular situation demands.'" Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). Where "the state must act quickly, a meaningful postdeprivation hearing is adequate." Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999).

"In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly." Camuglia, 448 F.3d at 1120. The Tenth Circuit has followed this precedent and held that concern for the public health and safety justifies quick action without a pre-deprivation hearing. See, e.g., Clark, 168 F.3d at 1189-90 (holding no hearing required before city took and quarantined foxes suspected to have rabies); Camuglia, 448 F.3d 1214 (holding no hearing required before city closed a restaurant based on concern that pesticide was being improperly used); Kirkland v. St. Vrain Valley Sch. Dist., 464 F.3d 1182, 1194 (10th Cir. 2006) (holding no hearing necessary before school district placed assistant superintendent on unpaid suspension based on errors resulting in multi-million dollar deficit); Ward v. Anderson, 494 F.3d 929, 937 (10th Cir. 2007) (holding no hearing necessary before officials began

9

investigation of a child care center).

Here, it is undisputed[6] that Mr. Hackford's and Mr. Strum's suspension of Mr. Collvins's Certificate was based, at least in part, on a concern for safety. Based on the complaints received, Mr. Hackford and Mr. Strum were concerned that the boilers inspected by Mr. Collvins had not been properly inspected and could pose a safety hazard. As in Kirkland, where the assistant superintendent had made financial errors resulting in a deficit, the District "certainly had a significant interest and immediate need" in having other certified boiler inspectors perform Mr. Collvins's inspections. See Kirkland, 464 F.3d at 1194. Accordingly, the District was justified in acting quickly and without a pre-deprivation hearing.

Any disputed facts about whether Mr. Strum was ultimately correct in his judgment that Mr. Collvins posed a safety risk are irrelevant. Camuglia, 448 F.3d at 1222. "The process one is due is not dependent on whether the government was right or wrong in the particular case but on whether, in general, constitutional norms require particular procedures to balance private and public interests." Id.

Because no pre-deprivation hearing was required, the court need not address the second prong of the qualified immunity analysis—whether the law was clearly established.

Post-deprivation Hearing

Once Mr. Collvins's Certificate was suspended, he was entitled to a post-deprivation hearing. "The Due Process Clause requires provision of a hearing 'at a meaningful time.'"

---

[6] As discussed above, Mr. Collvins attempts to dispute this fact by pointing to one section of the appeal hearing transcript in which Mr. Strum says that he doesn't know of any safety problem created by a permit for a non-existing boiler. But this does not dispute the fact that Mr. Strum was concerned about safety as a result of all of the issues with Mr. Collvins's inspections.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544 (1985). "At some point, a delay in the post-termination hearing would become a constitutional violation." Id.

In response to the Defendants' motion for summary judgment, Mr. Collvins argues that under the general principles of due process and the holding in Loudermill, it is clearly established that a delay such as the one experienced by Mr. Collvins is unconstitutional. But Mr. Collvins did not provide any Supreme Court or Tenth Circuit precedent to show that the law was, in fact, clearly established. And in Loudermill—the case Mr. Collvins contends demonstrates that the law is clearly established—the Supreme Court stated that, "[a] 9-month adjudication is not, of course, unconstitutionally lengthy *per se*." Id.

Although the Supreme Court has not provided a bright-line test to determine when a delay in post-deprivation proceedings becomes unconstitutional, it has provided some guidance:

> For even though there is a point at which an unjustified delay in completing a post-deprivation proceeding "would become a constitutional violation," the significance of such a delay cannot be evaluated in a vacuum. In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

F.D.I.C. v. Mallen, 486 U.S. 230, 242 (1988) (internal citations omitted). Accordingly, the court must examine not only the fact that eleven months elapsed before a decision was rendered, but also must seek the reason for the lapse before determining whether the delay was unconstitutional.

*Mr. Collvins's Private Interest*

Mr. Collvins's interest in his Certificate is undoubtedly important. Although Mr.

Collvins may have been able to perform some aspects of his job without the Certificate, he would not have been able to perform the full scope of duties associated with his position as a boiler inspector. But the court must also consider the harm to Mr. Collvins's interest occasioned by the delay. Approximately two weeks after his Certificate was suspended, Mr. Collvins took disability leave due to chemotherapy treatment. While on disability, Mr. Collvins was not entitled to carry a Certificate or to be certified by the National Board—both require active employment. Mr. Collvins remained on disability leave during the pendency of his appeal and has not resumed active employment.[7] Under the first Mallen factor, the fact that Mr. Collvins was unable to work for reasons unrelated to the suspension of his Certificate (at least for a portion of the delay) decreases the substantial interest Mr. Collvins had in his Certificate and the harm that he suffered.

*Justification for the Delay*

The Division offers several justifications for the delay in Mr. Collvins's appeal. Before addressing those justifications, it is important to understand the history of Mr. Collvins's appeal. Mr. Collvins's Certificate was suspended on November 26, 2007. Mr. Collvins then requested an appeal hearing on November 29 and November 30. Mr. Hackford recused himself from the appeal process on April 25, 2008, and the appeal was transferred to the Adjudication Division on May 19, 2008. The Adjudication Division then set and held a hearing in October 2008. Mr. Hackford's and Mr. Strum's involvement in the appeal process ended on May 19, 2008, when the

---

[7] At some point, Mr. Collvins's disability leave based on his chemotherapy treatment ended and Mr. Collvins took disability leave based on depression and anxiety stemming from the suspension of his Certificate. There isn't an identifiable "cut-off date" on which Mr. Collvins's depression became the cause of his disability as opposed to the chemotherapy.

appeal was transferred to the Adjudication Division. Approximately six months had passed since Mr. Collvins's Certificate was suspended.

Mr. Strum and the Division initially contacted Mr. Collvins's employer Hartford and expected that it would become involved in helping Mr. Collvins to be re-certified, as it had done in 2006. Mr. Strum had also contacted the National Board and asked that it conduct a peer review of Mr. Collvins. The National Board set a peer review date for March 2008, but later cancelled the review either because of Mr. Collvins's disability or pending the results of the appeal. Before the peer review was cancelled, Mr. Hackford and Mr. Strum believed that it was not necessary to hold an appeal hearing until the National Board had held its review. Finally, Mr. Hackford and Mr. Strum relied to some degree on the fact that neither Mr. Collvins nor Hartford sought to have Mr. Collvins re-certified. In light of all of these circumstances, Mr. Hackford and Mr. Strum did not believe that the appeal was urgent. Once Mr. Hackford received the April 2008 request for an appeal date from Mr. Collvins, he recused himself (based on health information he had learned from his correspondence with Mr. Collvins) and the appeal was turned over to the Adjudication Division.

*Likelihood that the Interim Decision Might be Mistaken*

Mr. Strum's concern about Mr. Collvins's Certificate was sparked by reports from three different on-site supervisors where Mr. Collvins had inspected boilers. After receiving the complaints, Mr. Strum interviewed inspectors who had previously worked on those boilers and reviewed Mr. Collvins's paperwork for the boilers to confirm the errors. Mr. Strum consulted with Mr. Hackford and with Mr. Hennebold, legal counsel for the Labor Commission, before making his decision to suspend Mr. Collvins's Certificate. Although there was some risk that

Mr. Strum's decision was mistaken, there is no evidence that Mr. Strum acted impulsively or without any independent investigation.

Considering the <u>Mallen</u> factors, the court finds for purposes of the qualified immunity analysis that the delay may have risen to the level of a constitutional violation. But, even in the event that the delay was unlawful, the court finds that the Defendants are entitled to qualified immunity on this issue. The Supreme Court has not announced a bright-line rule as to when a delay becomes unconstitutional. Even in applying the <u>Mallen</u> factors, the extent to which a delay is permissible remains unclear. And there is no Tenth Circuit precedent to place a reasonable official on notice that a six-month delay attributable to the official or an eleven-month total delay is unconstitutional. In what is apparently the only District Court case from the Tenth Circuit to address a similar issue, the District of New Mexico granted summary judgment for defendants based on qualified immunity: a nearly two-year delay between termination and the issuance of a decision did not rise to the level of a constitutional violation, and, even if it had, the law was not clearly established. <u>Cibas v. Lockwood</u>, No. CIV90-0341J, 1994 WL 924145, at *20-23 (D.N.M Aug. 22, 1994).

Because the law was not clearly established that a delay such as the one experienced by Mr. Collvins was unconstitutional, Mr. Hackford and Mr. Strum are entitled to qualified immunity.

**Substantive Due Process**

"An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause." <u>Clark v. City of Draper</u>, 168 F.3d 1185, 1190 (10th Cir. 1999). "But the arbitrariness must be extreme." <u>Camuglia v. City of Albuquerque</u>, 448 F.3d

1214, 1222 (10th Cir. 2006).

> The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges. It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.

Id. (quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)).

Here, the undisputed facts do not show that Mr. Hackford's and Mr. Strum's conduct was conscience shocking. There is no evidence that Mr. Hackford or Mr. Strum acted unreasonably in investigating the complaints the Division received. Through this investigation, Mr. Hackford and Mr. Strum became concerned about Mr. Collvins's inspections. Mr. Strum spoke with Mr. Hackford and Mr. Hennedbold and they agreed to suspend Mr. Collvins's Certificate. Mr. Hackford and Mr. Strum believed, based on several circumstances, that the appeal hearing was not urgent. After Mr. Collvins made a third request for an appeal date, Mr. Hackford recused himself from the appeal and Mr. Hennebold transferred the appeal to the Labor Commission. Regardless of whether Mr. Strum had an additional motive for notifying the National Board of Mr. Collvins's suspension, he was required to do so as part of his job. The conduct of Mr. Hackford and Mr. Strum does not shock the conscience.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Mr. Collvins contends that Mr. Hackford and Mr. Strum breached the implied covenant of good faith and fair dealing that inheres in every contract. It is unclear what Mr. Collvins contends is the contract that forms the basis of the implied covenant. In his Complaint, Motion for Summary Judgment, and Opposition to Defendants' Motion for Summary Judgment, Mr.

Collvins does not refer to any contract that existed between the Division and Mr. Collvins. Rather, Mr. Collvins refers only generally to the relationship that the two parties had as licensor and licensee. It appears that Mr. Collvins contends that the "Utah Certificate Renewal Training 2007" created either an express or implied-in-fact contract between Mr. Collvins and the Division. (See Collvins Reply Mem. [Dkt. No. 39] at 10.) This argument was made for the first time in Mr. Collvins's reply to the Defendants' Motion for Summary Judgment. And Mr. Collvins points to no other evidence to support his contention that there was a contractual relationship between the parties.

"Any claim for breach of contract must be predicated on the existence of an express or implied contract." Buckner v. Kennard, 2004 UT 78, ¶ 31, 99 P.3d 842. "An express or implied-in-fact contract results when 'there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain.'" Heideman v. Washington City, 2007 UT App. 11, ¶ 25, 155 P.3d 900 (quoting Rapp v. Salt Lake City, 537 P.2d 651, 654 (Utah 1974)).

Here, there is no evidence that either an express or implied-in-fact contract exists between the parties. The Certificate indicates only that Mr. Collvins completed the necessary training and understood the bases for which his Certificate could be revoked. It does not indicate an intention to make a bargain with certain terms. Because there was no contract, there was necessarily no breach of the covenant of good faith and fair dealing. Id. ¶ 27 n.15.

**Utah Constitutional Claims**

Mr. Collvins's Complaint mentions claims under Article I, Sections 7, 24, and 27 only in

the jurisdiction and venue section. None of the causes of action are framed in terms of the Utah Constitution. And Mr. Collvins himself addressed only the federal Constitutional claims in his Motion for Summary Judgment. Because Mr. Collvins did not allege any cause of action under the Utah Constitution, the court need not address the causes of action that could have been alleged.

## CONCLUSION

For the foregoing reasons, Mr. Collvins's Motion for Summary Judgment (Dkt. No. 26) is DENIED and Defendants' Motion for Summary Judgment (Dkt. No. 32) is GRANTED.

SO ORDERED this 8th day of November, 2011.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
United States District Judge